UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**ABBEY CARPET CO., INC.,**

    **Plaintiff,**

v.                                                               Case No: 5:18-cv-109-Oc-30PRL

**ABBEY FLOORING, LLC**

    **Defendant.**

## REPORT AND RECOMMENDATION[1]

Plaintiff, Abbey Carpet Company, Inc., has filed a motion for a preliminary injunction in this trademark case. (Doc. 2). The Court held a hearing on the motion on April 3, 2018 and heard argument from both sides. The Court also granted Defendant additional time to file a written response to the motion. (Doc. 25). Plaintiff has filed its reply, and the matter is now ripe. (Doc. 26). Upon referral and review, the Court finds that the motion is due to be granted because Plaintiff has shown a substantial likelihood of success on the merits.

**I.   BACKGROUND[2]**

Plaintiff is a Florida based corporation that has sold retail carpet and other floor coverings under the mark "ABBEY CARPET" since opening its first retail store in 1958. (Doc. 1 ¶¶1, 9).

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

[2] The evidence submitted by the parties consists of Plaintiff's verified complaint and the attached exhibits, (Doc. 1), and the declaration of Charles Abisalih, the sole member of Abbey Flooring, LLC, which is attached to Defendant's response. (Doc. 25). The original complaint did not contain a proper verification. (Doc. 1). Plaintiff has since filed an affidavit with the Court properly verifying the allegations in the complaint under penalty of perjury. (Doc. 29). *See* Local Rule 4.06(b)(1).

Plaintiff has since expanded its operations across the country under the marks "ABBEY CARPET & FLOOR," "ABBEY CARPET," and similar marks bearing the ABBEY name along with a logo featuring overlapping bolts of carpet. (Doc. 1 ¶9, Exhs. 2–10). Currently, Plaintiff licenses franchise locations throughout the United States, including a location in Ocala, Florida, and markets its services online and in its showrooms. (Doc. 1 ¶¶10, 15, 19). Plaintiff and its franchise members spend over ten million dollars annually on advertising and promotions and have over a billion dollars in annual sales. (Doc. 1 ¶¶19–20).

Defendant, Abbey Flooring, LLC, incorporated in Florida in November 2017 and began offering retail carpet and floor covering services under the mark "ABBEY FLOORING" at the beginning of 2018. (Doc. 1 ¶¶23–24) (Doc. 25 ¶5). Defendant's sole member is Charles Abisalih, who declares that he has gone by the name Chuck Abbey, both personally and professionally, throughout his thirty years in the carpet and flooring industry.[3] (Doc. 25 ¶¶5. 6). Defendant maintains a website, www.abbeyflooringllc.com, and operates a showroom in the Villages, Florida, approximately twenty miles from Plaintiff's Ocala showroom. (Doc. 1 ¶¶10, 25–26, Exhs. 1, 17).

On February 2, 2018, Plaintiff sent the first of two cease-and-desist letters to Defendant, alleging that Defendant was infringing on its ABBEY marks by selling similar services, under a similar mark, alongside a similar logo and colors. (Doc. 1 Exhs. 19–20). When Defendant did not respond to the second letter, Plaintiff brought this action. (Doc. 1).

Count one alleges Defendant infringed Plaintiff's registered trademark in violation of the Lanham Act, 15 U.S.C. §§ 1114–18. (Doc. 1 ¶¶35–41). Count two also alleges violations of the Lanham Act under theories of false designation and unfair competition, 15 U.S.C. § 1125(a), while

---

[3] Prior to opening Abbey Flooring, LLC, Mr. Abisalih and a former partner operated Royal Palm Flooring Unlimited, Inc., until the partners had a falling out in late 2017. (Doc. 25 ¶5).

count three claims Defendant diluted the value of Plaintiff's trademarks, in violation of 15 U.S.C. § 1125(c). (Doc. 1 ¶¶42–55). Count four alleges that in registering Defendant's domain name, abbeyflooringllc.com, Defendant had a bad-faith intent to create customer confusion in violation of the federal anti-cyber piracy statute, 15 U.S.C. § 1125(d). (Doc. 1 ¶¶56–59).

Counts five through eight arise under state law. Count five alleges infringement of Plaintiff's common law trade mark. (Doc. 1 ¶¶60–64). Count six alleges Defendant engaged in unfair competition, again in violation of common law rights. (Doc. 1 ¶¶65–67). Count seven alleges Defendant violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201–213. (Doc. 1 ¶¶68–70). Finally, count eight arises under section 495.151, Florida Statutes, and asserts that Defendant diluted the value of Plaintiff's mark. (Doc. 1 ¶¶71–74).

Along with its complaint, Plaintiff moved for a preliminary injunction. (Doc. 2). Defendant is entitled to fourteen days' notice in advance of a hearing on a motion for preliminary injunction. *See* Local Rule 4.06(a) (citing Fed. R. Civ. P. 6(c)). Plaintiff received notice of the motion for preliminary injunction on March 14, 2018, following which the Court set a hearing for April 3, 2018. (Doc. 10) (Doc. 25 ¶1). Although Defendant's response was due seven days before the hearing, at the hearing, the Court granted Defendant an additional three days after the hearing to respond to the motion because Mr. Abisalih maintained that he had difficulty locating counsel. *See* Local Rule 4.06(b)(3). (Doc. 25 ¶¶2, 3). The motion for preliminary injunction is now ripe.

## II.   LEGAL STANDARD

A movant is entitled to a preliminary injunction only if the movant can establish: "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued,

and (4) an injunction would not disserve the public interest." *Commodores Entm't Corp. v. McClary*, 648 F. App'x 771, 774 (11th Cir. 2016) (internal quotation marks omitted). A preliminary injunction is an equitable remedy, and the court has "significant discretion to tailor relief so as to best serve the interests of the parties and the public." *Uber Promotions, Inc. v. Uber Tech., Inc.*, 162 F. Supp. 3d 1253, 1262 (N.D. Fla. 2016).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

To succeed on the merits of its several claims, Plaintiff must essentially establish two things: "(1) that it had enforceable rights in its mark or name, and (2) that [Defendant] made unauthorized use of it 'such that consumers were likely to confuse the two.'" *Id.* (quoting *Custom Mfg. & Eng'g v, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647–48 (11th Cir. 2007)). The only exception is Plaintiff's claims under the federal anti-cyberpiracy act, 15 U.S.C. § 1125(d), which deals with the misuse of a domain name and requires Plaintiff to show, in addition to a valid mark, that "the defendant's domain names are identical or confusingly similar to the plaintiff's marks, and [] the defendant registered the domain names with the bad faith intent to profit from them." *PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004).

#### 1. Validity of the Mark

Plaintiff has provided evidence that it has registered the ABBEY CARPET and ABBEY CARPET & FLOOR marks with United States Patent and Trademark Office and used them in commerce on a continuous basis since at least 1992. (Doc. 1 ¶13, Exhs. 2–10). *See Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 n.3 (11th Cir. 2007) (citing 15 U.S.C. § 1057(b)) ("Registration establishes a rebuttable presumption that the marks are protectable or 'distinctive.'"). After five years of continuous use of a mark, the Lanham Act allows the owner of

a registered trademark to obtain "incontestable" status. Once a registration has achieved incontestable status, that status is treated as conclusive evidence of the registrant's right to use the trademark, subject to enumerated defenses. 15 U.S.C. §§ 1065, 1115(b); s*ee also Wilhelm Pudenz, GmbH v. Littlefuse, Inc.,* 177 F. 3d 1204, 1208 (11th Cir. 1999). Defendant does not dispute the validity of Plaintiff's marks. (Doc. 25 at 1). Therefore, Plaintiff has shown a substantial likelihood that it will succeed is establishing the validity of its mark.

### 2. *Likelihood of Confusion*

In assessing whether a likelihood of confusion exists, the Eleventh Circuit uses a seven-factor test based on: "(1)strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public." *Tana v. Dantanna's*, 611 F. 3d 767, 775 (11th Cir. 2010). None of the factors is dispositive. Instead, they present a series of factors to consider in determining the ultimate question: "is there a likelihood of confusion in the minds of an appreciable number of reasonably prudent buyers?" *Uber*, 162 F. Supp. 3d at 1266 (internal quotation marks omitted).

Nearly all of the factors here point toward a likelihood of confusion. Relevant to determining the strength of the mark, the first factor, is the type of mark. Here, Plaintiff's mark is a personal name, a type of "descriptive mark." Because a name is merely descriptive, "one who claims federal trademark rights in a name must prove that the name has acquired a secondary meaning." *Dantanna's*, 611 F. 3d at 774.

Secondary meaning exists when consumers connect the mark with the product sold. *AmBrit, Inc. v. Kraft, Inc.*, 812 F. 2d 1531, 1536 n.14 (11th Cir. 1986). In determining whether a mark has a secondary meaning, the court considers four factors: "(1) the length and nature of the name's use, (2) the nature and extent of advertising and promotion of the name, (3) the efforts of the proprietor to promote a conscious connection between the name and the business, and (4) the degree of actual recognition by the public that the name designates the proprietor's product or service." *Dantanna's*, 611 F. 3d at 776 (internal quotation marks omitted).

Plaintiff has used the ABBEY name for many decades, generating more than a billion dollars in sales for itself and its franchisees and investing more than ten million dollars a year in promoting the mark nationwide. (Doc. 1 ¶¶19, 20). Plaintiff also features the ABBEY name prominently on its website and at its show rooms. (Doc. 1 ¶¶9, 14–15, 20). Plaintiff avers that the mark is well-known across the United States and Canada and has provided examples of positive press coverage the mark has received in industry publications.[4] (Doc. 1 ¶¶19–22, Exh. 15).

Based on this evidence, it is likely that Plaintiff's mark has established a secondary meaning. This factor weighs heavily in favor of finding a likelihood of confusion since a "descriptive mark with secondary meaning is a relatively strong mark." *Dantanna's*, 611 F. 3d at 776.

The second factor, the similarly of the marks, addresses whether the marks "create the same overall impression when viewed separately." *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F. 3d 198, 216 (3d Cir. 2000). The marks need not be identical but only similar enough

---

[4] Defendant argues that Plaintiff's claims about how famous its brand is are not supported by sufficient evidence, such as customer surveys, and lack specificity. (Doc. 25 at 3). However, Plaintiff's estimates of its number of stores and annual sales and advertising are reasonably specific, and customer surveys are not required to establish secondary meaning. *See Tartell v. S. Fla. Sinus & Allergy Ctr., Inc.*, 790 F. 3d 1253, 1257 (11th Cir. 2015) (explaining secondary meaning can be proven with "with direct evidence, such as consumer surveys, or circumstantial evidence").

that "ordinary consumers would likely conclude that the two products share a common source, affiliation, connection or sponsorship." *Id.* (internal quotation marks omitted).

Here, both marks feature the "ABBEY" name as the first word in the mark, spelled the same way, followed by similar terms related to floor coverings such as "CARPET," "FLOORING," and similar combinations of words. (Doc. 1 Exhs. 2–10). Both companies also feature black and gold colors on their websites and in their logos and make prominent use of samples of flooring and carpeting. (Doc. 1 Exhs. 11–14, 17–18). The similarity of the type of font used by both companies on their respective websites is especially noteworthy and suggests a substantial likelihood of confusion. (Doc. 1 Exhs. 11, 17).

It is also notable that Plaintiff's franchisees and affiliates use variants of the name Abbey at their stores—such as Plaintiff's licensed showroom in Ocala, which is called "Abbey Floors & More"—creating a substantial risk of potential confusion as to whether Defendant is a licensed Abbey franchisee or affiliate. (Doc. 1 ¶10).

The third factor, the similarity of the products and services sold, also weighs heavily in favor of finding a likelihood of confusion. The test under this factor is whether the services offered are similar enough that consumers may come to believe that "a single entity is likely behind both." *Uber*, 162 F. Supp. 3d at 1269. Here, both companies sell retail floor coverings, including carpet hardwood flooring, in a variety of colors and materials, strengthening the possibility of customer confusion.

Likewise, the fourth factor, the similarity of the sales methods, weighs in favor of confusion as both parties sell their services via in-person sales at their respective showrooms and over the internet, and both companies appears to sell mainly to retail customers. (Doc. 1 ¶¶10, 25–26) (Doc. 25 ¶8). Relevant to the fifth factor, the similarity of the advertising methods, Plaintiff and

Defendant both advertise online, including on social media, and in their showrooms. These first five factors suggest a strong likelihood of confusion.

Also noteworthy are the sixth and seventh factors. As to the sixth factor, there is no direct evidence of Defendant's intent to infringe, and Defendant denies any intent to profit from Plaintiff's good will. (Doc. 25 at 3). Nonetheless, the substantial similarity between the marks, especially the similarity of the font, supports an inference that the infringement was not purely accidental. In addition, Mr. Abisalih's experience in the industry makes it possible to infer that Defendant was aware of Plaintiff's business and of the likelihood its mark could create customer confusion. While the evidence is limited as to the seventh factor, actual confusion, because Defendant has only been operating for a few months, Plaintiff's counsel stated at the hearing that Plaintiff's employees could testify to actual confusion that has already occurred.

Despite the strength of the seven factors, Defendant argues that it has a right to operate under the name Abbey because the mark is the personal name of the LLC's sole member, Mr. Abisalih.[5] Although courts are generally reluctant to enjoin a person from using his or her own name in business, there is "no absolute right to use one's own personal name when that use would be confusingly similar to an established use of a mark that the public has come to associate with another source." *Grimes Contracting, Inc. v. Grimes Utils., Inc.*, No. 3:08-cv-965, 2009 WL 88571, at *5 (M.D. Fla. Jan. 13, 2009).

---

[5] While not dispositive, the Court notes that the name Defendant seeks to operate under is not Mr. Abisalih's actual name but rather a nickname. In addition, while Mr. Abisalih declares that he used the name "Chuck Abbey" professionally, it does not appears that any of his businesses have ever operated under that name, and Abbey Flooring, LLC has only operated for a few months. (Doc. 25 ¶5–7). Regardless, it is well-established that a person is not entitled to operate under a personal name if the personal name creates a substantial risk of confusion among reasonable consumers. *See generally Peaceable Planet, Inc. v. Ty, Inc.*, 362 F. 3d 986, 989–90 (7th Cir. 2004) (discussing rationales for requiring secondary meaning of personal names).

Because, as discussed above, Plaintiff has succeed in showing a substantial likelihood that its mark has acquired a secondary meaning and Defendant's use is likely to create customer confusion, the fact that Mr. Abisalih is operating under his own name (or rather, a nickname) is not sufficient to limit Plaintiff's trademark protections. *See Conagra, Inc. v. Singleton*, 743 F. 2d 1503, 1513 (11th Cir. 1984) (holding personal name that had acquired secondary meaning was entitled to trademark protection). Nor is the use of a disclaimer by Defendant on its website sufficient to remedy the substantial likelihood of customer confusion. *BMW of N. Am., Inc. v. Automotive Gold, Inc.*, No. 96-384, 1996 WL 1609124, at * 5 (M.D. Fla. June 19, 1996) ("The mere fact that Defendant employs a disclaimer which attempts to correct any confusion regarding the origin of the product in question does not excuse its use of the mark."); *Univ. of Ga. Athletic Ass'n v. Laite*, 756 F. 2d 1535, 1547 (11th Cir. 1985). Thus, Plaintiff has succeeded in showing a substantial likelihood of success on the merits on its trademark claims.

### 3. Anti-Cyber Piracy Claim

As stated above, the anti-cyber piracy statute, 15 U.S.C. § 1125(d), requires Plaintiff to show, in addition to a valid mark, that "the defendant's domain names are identical or confusingly similar to the plaintiff's marks, and [] the defendant registered the domain names with the bad faith intent to profit from them." *PetMed*, 336 F. Supp. 2d at 1218. The statute includes nine factors a court "may consider" in determining whether the defendant had the requisite bad-faith intent. *See Pensacola Motor Sales, Inc. v. E. Shore Toyota, LLC*, 684 F. 3d 1211, 1222–23 (11th Cir. 2012). The list of factors is not exclusive (the court need not consider all of the listed factors and may consider other factors) and the analysis is not based on "a score card of the statutory factors." *Id.* at 1223.

As to the similarity of the domains, both Plaintiff's and Defendant's domain names contain the ABBEY mark followed by terms indicating floor covering. (Doc. 1 ¶¶14–15). Plaintiff's franchisees operate domain names using the ABBEY mark as well, such as ocala.buyabbey.com, the domain of Plaintiff's local affiliate. (Doc. 1 Exhs. 12–14). The similarity of these domain names to Defendant's abbeyflooringllc.com domain is likely to create a substantial risk of customer confusion.

Turning to Defendant's bad-faith intent, although several of the nine statutory factors are not relevant to this case, the fact that Plaintiff's trademark is well-established (the first factor), and the evidence that Defendant's mark has a strong likelihood of confusing consumers (the fifth factor) both weight in favor of finding a bad-faith intent. 15 U.S.C. § 1125(d)(1)(B)(i), (v). In addition, as noted above, Mr. Abisalih is experienced in the industry, having spent thirty years installing residential carpeting, the last seven years in central Florida, implying that he was likely aware of Abbey Carpet and its franchisees. In addition, the strong similarities between the two marks implies a substantial likelihood that Defendant's infringement was not accidental. Thus, the Court finds there is a substantial likelihood that Plaintiff will succeed on the anti-cyber piracy claims as well.

### B. Irreparable Harm

"[A] sufficiently strong showing of likelihood of confusion caused by trademark infringement may by itself constitute a showing of a substantial threat of irreparable harm." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) (internal quotation marks omitted). This is "because of the difficulty of quantifying the likely effect on a brand of a nontrivial period of consumer confusion." *Kraft Foods Grp. Brands, LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F. 3d 735, 741 (7th Cir. 2013). Although the Eleventh Circuit has

concluded that a presumption of irreparable harm is not appropriate in trademark cases, evidence of a likelihood of customer confusion is relevant to the analysis of irreparable harm, and the same evidence can be the basis for a finding of a likelihood of irreparable harm. *See Commodores*, 648 F. App'x at 777.

Here, Plaintiff has shown a substantial likelihood of customer confusion. The inherent difficulty of quantifying the lost good will that would result from customer confusion about the quality and nature of Plaintiff's product and services suggests the harm is likely to be irreparable. *See Kraft Foods*, 735 F. 3d at 741. In addition, Plaintiff took immediate action on learning of the alleged infringement, to remedy the violations. (Doc. 1 ¶27). *Cf. Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (noting that a delay in seeking an injunction, while not fatal, "militates against a finding of irreparable harm"). Thus, Plaintiff has met its burden to show a likelihood of irreparable harm.

### C. Balance of the Harms

Plaintiff must also demonstrate "that the threatened injury to the trademark owner outweighs whatever damage the injunction may cause to the alleged infringer." *PLD Int'l*, 263 F.3d at 1300. "The relevant inquiry in assessing the weight of potential harms is whether the probable loss of consumer goodwill outweighs Defendant's losses arising from their inability to use [the trademark] until a decision on the merits is reached." *7-Eleven, Inc. v. Kapoor Bros., Inc.*, 977 F. Supp. 2d 1211, 1227 (M.D. Fla. 2013).

Defendant has only recently begun offering services under the ABBEY mark having opened its store at the beginning of the year while Plaintiff has used the mark for decades and has invested millions of dollar annually in promoting its mark. (Doc. 1 ¶¶9, 19–23) (Doc. 25 ¶5). Likewise, Defendant has only a single store and a relatively simple website, whereas Plaintiff and

its members operate more than five hundred showrooms nationwide and in Canada and have a more developed online presence. (Doc. 1 ¶19 Exh. 1) (Doc. 25 ¶7).

In addition, because the injunction is tailored to protecting Plaintiff's well-established mark, Defendant has no legitimate interest that would be harmed by the injunction "since the preliminary injunction would only prevent [him] from using marks which [he is] not entitled to use." *7-Eleven*, 977 F. Supp. 2d at 1227 (quoting *Clayton v. Howard Johnson Franchise Sys., Inc.*, 730 F. Supp. 1553, 1561–62 (M.D. Fla. 1988)). Therefore, the balance of the harms favors a preliminary injunction.

### D. Public Interest

In the trademark context, the relevant interests include the public's interest in not being confused as to the source of a product or service along with the public's interest in encouraging competition. *Uber*, 162 F. Supp. 3d at 1281. The "public interest is served by preventing consumer confusion in the marketplace." *PLD Int'l*, 263 F. 3d at 1304. Plaintiff has demonstrated a substantial likelihood of customer confusion absent an injunction. Plaintiff also mentioned at the hearing that its employees were aware of some actual customer confusion as well. Thus, the public interest is served by an injunction. *See SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F. 3d 1325, 1337 (11th Cir. 1996) ("When inevitable confusion occurs in the marketplace due to unrestricted dual use of a trademark, the 'paramount' value of the public interest demands some adjustment to the status quo; some remedy must be fashioned.").

Accordingly, Plaintiff has succeeded in establishing the four factors necessary for granting a preliminary injunction. The proposed injunction submitted by Plaintiff is largely appropriate. But Plaintiff's request for a declaration that it is entitled to its attorney's fees, along with its request

that Defendant hand over for destruction all of its materials containing the Abbey name, are premature.

### E.  Bond

"The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The amount of the injunction is a matter within the discretion of the court, and the court may elect to require no security at all. *See BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F. 3d 964, 971 (11th Cir. 2005). The burden is on the party seeking security from a wrongful injunction to establish a rational basis for the amount of the bond. *See Medi-Weightloss Franchising USA, LLC v. Sadek*, No. 8:09-cv-2421, 2010 WL 1837767, at *8 (M.D. Fla. Mar. 11, 2010).

Defendant has not sought a bond nor provided any evidence to establish a rational basis for a bond, and the Court see no obvious need for a bond given that Defendant's business only recently began operations and is unlikely to suffer significant damages from the injunction. Therefore, the Court recommends that no bond be required at this time.

### IV.  CONCLUSION

Accordingly, it is **recommended** that Plaintiff's motion for preliminary injunction be **GRANTED** (Doc. 2) and an order entered:

1) Preliminarily enjoining Defendant from:

   A. Using the mark ABBEY FLOORING, ABBEY CARPET & FLOOR, and ABBEY CARPET and other marks that include the word "Abbey" in connection with Defendant's services;

  B. Using advertising that suggests endorsement by Plaintiff of Defendant's services; and

  C. Using the domain name www.abbeyflooringllc.com or any other domain name that includes the word "Abbey."

2) Requiring Defendant to forfeit the www.abbeyflooringllc.com domain name, and cease and desist from using any domain name that includes the ABBEY FLOORING or ABBEY CARPET & FLOOR, ABBEY CARPET, or other Abbey marks; and

3) Directing Defendant to within thirty days after service of this order, file with this Court and serve upon Plaintiff, a report, in writing, and under oath, setting forth the manner and form in which Defendant has complied with the injunction.

**Recommended** in Ocala, Florida on April 13, 2018.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy